1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                         **DISTRICT OF NEVADA**
6
7   Jessica V.,                                Case No. 2:24-cv-01947-NJK
8          Plaintiff(s),                                **ORDER**
9   v.                                          [Docket No. 10]
10  Frank Bisignano,
11         Defendant(s).

12          This case involves judicial review of administrative action by the Commissioner of Social
13  Security ("Commissioner") denying Plaintiff's application for disability insurance benefits
14  pursuant to Title II of the Social Security Act.  Currently before the Court is Plaintiff's opening
15  brief seeking remand.  Docket No. 10.  The Commissioner filed a responsive brief in opposition.
16  Docket No. 12.  Plaintiff filed a reply.  Docket No. 13.  The parties consented to resolution of this
17  matter by the undersigned magistrate judge.  *See* Docket Nos. 3-4.

18  **I.    STANDARDS**

19          A.    Disability Evaluation Process

20          The standard for determining disability is whether a social security claimant has an
21  "inability to engage in any substantial gainful activity by reason of any medically determinable
22  physical or mental impairment which can be expected . . . to last for a continuous period of not
23  less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A).  That
24  determination is made by following a five-step sequential evaluation process.  *Bowen v. Yuckert*,
25  482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  The first step addresses
26  whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. § 404.1520(b).
27  The claimant must also meet insurance requirements.  20 C.F.R. § 404.130.  The second step
28  addresses whether the claimant has a medically determinable impairment that is severe or a

                                            1

combination of impairments that significantly limits basic work activities.    20 C.F.R. § 404.1520(c).  The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.    20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.    There is then a determination of the claimant's residual functional capacity, which assesses the claimant's ability to do physical and mental work-related activities.  20 C.F.R. § 404.1520(e).  The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(f).  The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(g).

### B.    Judicial Review

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits.  42 U.S.C. § 405(g).  The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*

## II.    BACKGROUND

### A.    Procedural History

On May 23, 2022, Plaintiff filed an application for disability benefits with an alleged onset date of March 23, 2022.  *See, e.g.*, Administrative Record ("A.R.") 148-54.  On August 25, 2022, Plaintiff's application was denied initially.  A.R. 80.  On April 17, 2023, Plaintiff's claim was denied on reconsideration.  A.R. 90-94.  On May 2, 2023, Plaintiff filed a request for a hearing before an administrative law judge.  A.R. 94-96.  On May 1, 2024, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ Bonnie Hannan.  *See* A.R. 43-69.  On May 25, 2024, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision.  A.R. 15-38.  On August 21, 2024, the

1  ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

2  Plaintiff's request for review.  A.R. 1-7.  On October 18, 2024, Plaintiff commenced this suit for

3  judicial review.  Docket No. 1.

4        B.     The Decision Below

5       The ALJ's decision followed the five-step sequential evaluation process.  A.R. 20-34.  At

6  step one, the ALJ found that Plaintiff met the insured status requirements and had not engaged in

7  substantial gainful activity since the alleged onset date.  A.R. 20.  At step two, the ALJ found that

8  Plaintiff has the following severe impairments:   generalized anxiety disorder, major depressive

9  disorder, and posttraumatic stress disorder (PTSD).  A.R. 20-22.  At step three, the ALJ found that

10  Plaintiff does not have an impairment or combination of impairments that meets or medically

11  equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

12  A.R. 22-26.  The ALJ found that Plaintiff has the residual functional capacity to

13
14
15
16
> perform a full range of work at all exertional levels but with the
> following nonexertional limitations:  the claimant is able to perform
> simple, routine, and repetitive tasks; is able to perform simple work-
> related decisions; is able to tolerate few changes in a routine work
> setting, defined as performing the same duties at the same station or
> location day to day; and can have occasional contact with
> supervisors, co-workers, and the public.

17  A.R. 26-32.  At step four, the ALJ found Plaintiff was unable to perform any past relevant work.

18  A.R. 32.  At step five, the ALJ found that jobs exist in significant numbers in the national economy

19  that Plaintiff can perform based on her age, education, work experience, and residual functional

20  capacity.  A.R. 32-34.  In doing so, the ALJ defined Plaintiff as a younger individual aged 18-49

21  with at least a high school education.  A.R. 32.  The ALJ found the transferability of job skills to

22  be immaterial.   A.R. 32.   The ALJ considered Medical Vocational Rules, which provide a

23  framework for finding Plaintiff not disabled, along with vocational expert testimony that an

24  individual with the same residual functional capacity and vocational factors could perform work

25  as an industrial cleaner, machine feeder, store laborer, marker, mail clerk, and housekeeping

26  cleaner.  A.R. 32-34.

27       Based on all of these findings, the ALJ found Plaintiff not disabled since the alleged onset

28  date.  A.R. 34.

### III.    ANALYSIS

Plaintiff argues on appeal that the residual functional capacity assessment lacks the support of substantial evidence.  Plaintiff's argument is predicated on the contentions that the ALJ improperly translated the medical record without a matching prior administrative medical finding ("PAMF").  More specifically, Plaintiff argues that the ALJ erred in formulating an RFC with moderate limitations given that the ALJ rejected PAMFs opining that Plaintiff's impairments were so insignificant as to be considered non-severe.  *See, e.g.*, Docket No. 10 at 5-7.  Plaintiff also argues that the ALJ was required to order a new evaluation or further develop the record.  *See, e.g.*, *id.* at 7-8.[1]  The Commissioner responds that the ALJ properly translated the record into an RFC that was supported by substantial evidence, Docket No. 12 at 4-10, and that the ALJ was not required to order a new evaluation or further develop the record, *id.* at 10-12.  The Commissioner has the better arguments.

"The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence."  *Jaime v. Kijakazi*, Case No. 1:21-cv-01672-SKO, 2023 WL 2466196, at * 7 (E.D. Cal. Mar. 10, 2023) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "It is clear that it is the responsibility of the ALJ . . . to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1546(c).  Hence, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  The RFC is "based on *all* the relevant evidence" in the record.  20 C.F.R. § 404.1545(a)(1) (emphasis added); *accord Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017).  "There is no requirement that the RFC be based

---

[1] The motion also indicates in conclusory fashion that the ALJ failed to explain her decision, Docket No. 10 at 8, and Plaintiff then somewhat develops that argument in reply, Docket No. 13 at 6-7.  The Court declines to address arguments that were not meaningfully developed in the opening brief.  *See Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  The Court notes that judges have rejected contentions that an ALJ's RFC determination was not sufficiently detailed given that "the ALJ was not required to perform a function-by-function analysis, nor address each work-related restriction identified in the record so long as the RFC is otherwise supported by substantial evidence."  *Lamothe v. Kijakazi*, Case No. 2:23-cv-00206-EJY, 2023 WL 8714954, at *4 (D. Nev. Dec. 18, 2023) (quoting *Alvarez v. Comm'r of Soc. Sec.*, Case No. 1:21-cv-00601-EPG, 2022 WL 2359322, at *3 (E.D. Cal. June 29, 2022)).

on a specific medical opinion, as long as the resulting formulation is supported by substantial evidence." *Brian A. B. v. O'Malley*, Case No. 3:23-cv-00070-HRH, 2024 WL 982275, at *8 (D. Alaska Mar. 7, 2024) (collecting cases).

ALJs are laypeople who are not permitted to themselves interpret "raw medical data." *See, e.g.*, *Rose P. v. Comm'r of Soc. Sec.*, 414 F. Supp. 3d 1339, 1346 (W.D. Wash. 2019). **"**Importantly though, the phrase 'raw medical data' is not synonymous with 'all medical records.'" *Pthlong v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-1558-DC-GSA, 2025 WL 347209, at *3 (E.D. Cal. Jan. 30, 2025), *adopted*, 2025 WL 2718754 (E.D. Cal. Sept. 24, 2025); *see also Bufkin v. Saul*, 836 Fed. Appx. 578, 579 (9th Cir. 2021). Instead, "raw medical data" in this context references laboratory findings, medical imaging, and other highly technical information that is not susceptible to a lay understanding. *See, e.g.*, *Howell v. Kijakazi*, Case No. 20-cv-02517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (explaining that MRIs, radiological studies, and x-rays may be considered "raw medical data"). ALJs are otherwise "capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). ALJs do not require the assistance of medical experts or consultative guidance in order to assess non-technical medical records. *Johnson on behalf of S.M.S. v. Comm'r of Soc. Sec.*, Case No. 1:21-cv-01704-DJC-GSA, 2024 WL 3362953, at *12 (E.D. Cal. July 9, 2024), *adopted*, 2025 WL 373151 (E.D. Cal. Feb. 3, 2025); *see also, e.g.*, *Verdugo v. Comm'r of Soc. Sec.*, Case No. 1:24-cv-00571-JLT-GSA, 2025 WL 1382909, at *5 (E.D. Cal. May 13, 2025). Courts routinely reject contentions that an ALJ errs in considering aspects of the medical record that are "straight-forward and easy to understand." *See Beverly v. Comm'r of Soc. Sec.*, Case No. 2:24-cv-00914-DAD-DMC, 2025 WL 1752291, at *2 (E.D. Cal. June 25, 2025) (collecting cases). That may include cases where the ALJ relies on normal findings during mental status examinations. *See, e.g.*, *White v. Comm'r of Soc. Sec. Admin.*, Case No. CV-23-02125-PHX-MTL, 2024 WL 4764450, at *3 (D. Ariz. Nov. 13, 2024); *Cleotilde V. v. O'Malley*, Case No. CV 23-3948 (KS), 2024 WL 3914629, at *7-8 (C.D. Cal. July 5, 2024); *Davidson v. Comm'r of Soc. Sec.*, Case No.

1:22-cv-01288-EPG, 2023 WL 8788879, at *4 (E.D. Cal. Dec. 19, 2023); *Boh v. Saul*, Case No. 2:20-cv-00350-EJY, 2021 WL 2772554, at *11 (D. Nev. July 2, 2021).[2]

The undersigned has previously rejected the argument that an ALJ necessarily errs by formulating an RFC if she finds the medical opinions or PAMFs to be unpersuasive. *See, e.g.*, *Michael S. v. O'Malley*, Case No. 2:24-cv-00204-NJK, 2024 WL 4346512, at *5 (D. Nev. Sept. 27, 2024). Although not cited by the parties, one such decision addresses a scenario very similar to the circumstances and arguments in this case. *See Gregory F. v. O'Malley*, Case No. 2:23-cv-00721-NJK, 2024 WL 2275178, at *4 (D. Nev. May 17, 2024). In that case, the claimant's mental health was the subject of only two opinions, those of non-examining state agency psychological consultants who reviewed the medical records for an initial determination and on reconsideration of that determination. *Id.* Both consultants opined that the claimant's mental impairments were non-severe. *Id.* In reviewing the totality of the evidence, the ALJ declined to adopt those conclusions because the record included observations of the claimant's abnormal behavior and a history of terminations for adverse interactions. *Id.* Considering all of the evidence in the record, the ALJ crafted an RFC with added mental health limitations. *Id.* The fact that the RFC was crafted more favorably to the claimant than the PAMFs was not sufficient to demonstrate error. *Id.* Instead, the ALJ properly "considered the opinion of the reviewing doctors, compared the opinion to the other evidence in the record, described her reasons for finding the opinions partially persuasive and then gave explicit reasons for adding limitations based on the other credible evidence." *Id.* The Court concluded that substantial evidence supported the RFC determination even though no medical opinion recommended the particular functional limitations assessed by the ALJ. *Id.*

The Court is also not persuaded that the ALJ erred in this case. Plaintiff is correct that the ALJ found the two PAMFs on her mental health to be unpersuasive, discounting each in a manner that benefited Plaintiff. To wit, both of the PAMFs concluded that Plaintiff's mental health

---

[2] The Court recognizes that Plaintiff cites to non-binding case law that may not be entirely consistent with the discussion and conclusions reached herein. Ultimately, the Court is more persuaded by the legal authority discussed in this order.

limitations were not severe, while the ALJ rejected those conclusions and found that the Plaintiff's

limitations were properly assessed as being moderate.[3]  The ALJ based the decision on the medical

and other evidence in the record as contemplated by the governing regulations.  Although the ALJ

---

[3] Plaintiff's position is certainly awkward as a matter of logic.  The ALJ rejected the PAMFs in a manner that benefited Plaintiff.  A.R. 30-31.  It is one thing to argue that an ALJ erred by rejecting medical opinions or PAMFs that would support a finding of disability and then formulating an RFC that did not equate to a disability.  Similarly, it is one thing to argue that an ALJ erred in crafting an RFC with no medical opinions or PAMFs being prepared at all where the medical record could support a finding of disability.  It is quite another thing to agree that an ALJ properly rejected medical opinions or PAMFs concluding that the Plaintiff suffered from non-severe limitations, only to then argue by extension that the ALJ erred in giving the claimant that benefit of the doubt in formulating the RFC.  *See Mills v. Comm'r of Soc. Sec.*, Case No. 2:13-cv-00899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("plaintiff can hardly fault the ALJ for giving him the benefit of the doubt and assessing an RFC that is more favorable to plaintiff than most of the medical opinions in the record"); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (stating that an ALJ does not commit reversible error by tempering extremes of medical opinions that are adverse to claimant's application for disability benefits); *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (explaining that there is no harm in the "overinclusion of debilitating factors").  Courts routinely reject arguments that an ALJ erred in formulating an RFC in a manner that is better for the claimant than the conclusions reached in the medical opinions or PAMFs.  *See, e.g., Monique A. v. Colvin*, Case No. 23-cv-1981-LR, 2024 WL 5059153, at *18 (S.D. Cal. Dec. 10, 2024) (finding no error in formulating RFC that did not match medical opinions where the RFC was "*more restrictive*" than the medical opinions (emphasis in original)); *White*, 2024 WL 4764450, at *3 (finding no error in formulating RFC where "the ALJ's findings were *more* restrictive than the limitations that the doctors assessed" (emphasis in original)); *Gregory F.*, 2024 WL 2275178, at *4 (finding no error in ALJ rejecting PAMFs and formulating RFC in a manner more favorable to the claimant); *Kasie Racquelle Lee A. v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-00427-REP, 2024 WL 992634, at *7-8 (D. Id. Feb. 20, 2024) (finding no error in the ALJ formulating an RFC to give the Plaintiff the benefit of the doubt despite general absence of supporting medical records), *adopted*, 2024 WL 989801 (D. Id. Mar. 7, 2024); *Gonzalez v. Kijakazi*, Case No. 1:21-cv-1676-SKO, 2023 WL 6164086, at *7 (E.D. Cal. Sept. 21, 2023) (finding no error in the ALJ formulating an RFC more restrictive than that opined by the state agency physicians); *Ontiveros v. Kijakazi*, Case No. 2:22-cv-01694-EJY, 2023 WL 3412787, *5-6 (D. Nev. May 12, 2023) (rejecting argument that the ALJ erred in formulating RFC in conjunction with discounting medical opinions that were less favorable to the claimant); *Harold J. v. Saul*, Case No. C19-1147-MAT, 2020 WL 996865, at *6 (W.D. Wash. Mar. 2, 2020) (finding no error where ALJ assessed RFC in the claimant's favor upon not fully accepting medical opinions); *Haller v. Colvin*, Case No. 6:14-cv-00207-BR, 2015 WL 1433597, at *5 (D. Or. Mar. 26, 2015) (finding argument to be "without merit" that ALJ insufficiently explained basis for RFC limitations that were greater than those identified in any medical opinion); *Gonzales v. Comm'r of Soc. Sec. Admin.*, Case No. CV 14-0078-JPR, 2015 WL 685347, at *7 (C.D. Cal. Feb. 18, 2015) (finding no error where "no 'acceptable medical source' has ever opined that Plaintiff had more significant physical limitations than those reflected in the RFC; rather, the three doctors who rendered opinions, one of whom performed [an] examination, found that Plaintiff had no physical limitations"); *Hopper v. Colvin*, Case No. 6:13-cv-01525-HZ, 2014 WL 6473566, at *4 (D. Or. Nov. 14, 2014) (rejecting contention that an ALJ erred by creating an RFC that is more favorable than the medical opinions); *Kravat-Jahner v. Colvin*, Case No. CV-13-00142-PHX-BSB, 2014 WL 880506, at *12 (D. Ariz. Mar. 6, 2014) (rejecting as "meritless" argument that ALJ erred in RFC formulation after rejecting conclusion in PAMFs that mental health conditions were not severe).

recognized Plaintiff's diagnoses regarding depression, anxiety, and PTS, the ALJ also recognized

that the medical record includes many instances in which Plaintiff presented with normal mental

functioning:

> A May 22, 2023 record noted diagnostic assessments of depression and anxiety and indicated that on exam, the claimant's mood was depressed (the record also indicated the claimant received a PH-9 score of 23, indicating severe depressive symptoms, and received a general anxiety disorder-7 score of 18, indicating severe symptoms) (Exhibit 15F, pages 256-259). A November 17, 2023 record also contained a diagnosis of chronic PTSD (Exhibit 15F, page 80). Also, a May 8, 2023 record noted nightmares, and a May 12, 2023 record noted flashbacks (Exhibit 15F, pages 264, 274).
>
> However, a June 24, 2022 record indicated that on exam, the claimant was clean, pleasant, awake, alert and oriented to person, place, and time with normal speech, had intact thought process, had appropriate mood and affect, had good judgment and insight, and had no suicidal ideation (Exhibit 15F, page 339). In addition, a March 29, 2023 record indicated that on exam, the claimant was well groomed, had normal behavior, had adequate eye contact, was cooperative, had linear, goal-oriented thought process, had rational thought content, had clear, realistic perceptions, denied suicidal ideation, had euthymic mood, was alert and oriented x4 (person, place, time, and situation), and did not express any memory-related concerns (Exhibit 15F, pages 308-309). A March 15, 2023 record also indicated that on exam, the claimant was alert and oriented x4, was cooperative, had intact insight, and had intact judgment (Exhibit 15F, page 316). A May 17, 2023 record also indicated that on exam, the claimant was alert and attentive, was cooperative, had appropriate grooming, had no hallucinations, had no delusions, had good insight, and had good judgment (Exhibit 15F, pages 263-264). In addition, a November 2, 2023 record indicated that on exam, the claimant was calm, was cooperative, was awake, and was alert and oriented x 4 (Exhibit 15F, page 93).

A.R. 27. While arguing against the finding of non-disability, Plaintiff stipulates on appeal that the

ALJ correctly identified and summarized that medical record. *See* Docket No. 10 at 4. Moreover,

the ALJ was not interpreting "raw data" as a lay person, but was relying on medical findings that

are not technical in nature. In addition, the other evidence of record showed many instances in

which Plaintiff engaged in daily activities that were inconsistent with the disability she alleged:

> The claimant's reported activities also suggest she retained functional abilities. For example, the claimant indicated she takes care of a dog, cooks for it, and takes it for walks, can dress, bathe, feed herself, prepare her own meals, do laundry, drive, go out alone, shop by computer, count change and use a checkbook, watch YouTube videos, spend time with others via e-mail, texting, mail, and video chat, and does not have any problems getting along with

others (Exhibit 8E).   A September 20, 2023 record also indicated the claimant reads, is friendly with her neighbors, watches YouTube videos to learn things, cleans, does yard work, cooks, looks for jobs online, and volunteers (Exhibit 15F, pages 119, 121).   In addition, the claimant testified she is able to take care of her own personal needs, such as bathing and dressing, drives (until her car was repossessed), goes to the grocery store, shops for about an hour and a half, walks, is able to read and write English, is able to perform simple math (i.e., add, subtract, and make change in a store), and walks the dog (Hearing Testimony).

A.R. 27.  The medical record and testimonial record cited by the ALJ constitutes substantial evidence for the RFC.  Indeed, Plaintiff does not explain in meaningful fashion how the cited evidence in the record would not suffice to constitute substantial evidence.  The mere fact that the RFC did not mirror the PAMFs finding only non-severe impairments does not require a finding on appeal that the ALJ erred.

The Court is also unpersuaded that the ALJ was required to order a new medical opinion or to further develop the record.  *See* Docket No. 10 at 7-8.  As a threshold matter, Plaintiff's argument is again predicated on the proposition that an ALJ must craft the RFC to match a medical opinion, which is inconsistent with the law identified herein.[4]  Moreover, an ALJ must develop the record further "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).  No such ambiguity or inadequacy exists here; "the ALJ supported [her] RFC with translating and incorporating all material in the record (including medical records), discounted medical opinions less favorable to Plaintiff, and reached an RFC with rational conclusions regarding Plaintiff's limitations." *Ontiveros*, 2023 WL 3412787, at *6; *see also, e.g.*, *Cleotilde V.*, 2024 WL 3914629, at *7-8.

Although the Court finds no error for the reasons stated above, the Court notes further that Plaintiff makes no showing as to how any error was harmful.  It is the Plaintiff's burden to establish the harmfulness of error.  *See, e.g.*, *Ludwig v. Astrue*, 681 F.3d 1047 1054 (9th Cir. 2012)

[4] To repeat, the PAMFs that were provided were less restrictive than the ALJ's RFC.  Plaintiff does not meaningfully explain how her position would work in practice, including whether a generous ALJ must seek additional opinion input *ad infinitum* until one is eventually rendered that similarly provides Plaintiff the benefit of the doubt.  *See* Docket No. 12 at 11 (Commissioner's brief noting the "curious adjudicative system" envisioned by Plaintiff's position).  The Court declines to endorse this Kafkaesque scenario.

(discussing *Shinseki v. Sanders,* 556 U.S. 396 (2009)). Simply arguing that the ALJ erred in crafting the RFC is insufficient to establish harmful error; the claimant must explain why the alleged error impacted the ultimate non-disability determination. *See Myers v. King*, Case No. 3:24-cv-00299-CLB, 2025 WL 456943, at *5 (D. Nev. Feb. 10, 2025); *see also, e.g.*, *Valenna v. Colvin*, Case No. C15-1498-RAJ-JPD, 2016 WL 4367600, at *6 (W.D. Wash. June 15, 2016), *adopted*, 2016 WL 4263047 (W.D. Wash. Aug. 12, 2016). The ALJ here provided ample evidentiary support in finding Plaintiff not disabled. *See* A.R. 22-32.[5] Plaintiff fails to advance meaningful argument as to how the ALJ erred in any harmful way by rejecting the PAMFs finding Plaintiff's mental health limitations to be non-severe and then formulating an RFC that was more favorable to Plaintiff.

## IV.    CONCLUSION

The decision below is **AFFIRMED**. The Clerk's Office is instructed to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

IT IS SO ORDERED.

Dated: October 20, 2025

_____
Nancy J. Koppe
United States Magistrate Judge

---

[5] The ALJ found Plaintiff's testimony as to the intensity, persistence, and limiting effects of these symptoms to be inconsistent with the medical record and Plaintiff's daily activities. *See* A.R. 26-27. Notably, Plaintiff does not challenge that finding on appeal.